**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- x

**CHRISTINE THOMAS,** on behalf of herself
and all other persons similarly situated,

                       Plaintiff,

-against-

**CV IMPORTS, LLC d/b/a CV LINENS**,

                       Defendant.

------------------------------------------------------------------- x

Case No. _____

**CLASS ACTION COMPLAINT**
**& DEMAND FOR JURY TRIAL**

Plaintiff, Christine Thomas ("Plaintiff" or "Ms. Thomas"), individually and on behalf of all others similarly situated, by and through undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against **CV IMPORTS, LLC d/b/a CV LINENS**,("Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., the New York Civil Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

## INTRODUCTION

1.     In a September 25, 2018 letter to U.S. Representative Ted Budd, the United States Department of Justice confirmed that public accommodations must make the websites they own, operate, or control equally accessible to individuals with disabilities, and stated that the Department had articulated that interpretation for more than twenty years.

2.     Plaintiff Christine Thomas is a resident of Bronx County, New York, and suffers from permanent bilateral ocular disability. She has complete loss of vision in her right eye, severe and significantly impaired vision in her left eye, and her visual condition satisfies the criteria for legal blindness under applicable federal and New York standards.  Exhibit A

3.     Plaintiff is a proficient user of screen-access technology and relies on screen-reading

software and keyboard navigation to access digital content independently. Because of her permanent visual impairment, accessible coding, meaningful alternative text, properly labeled form controls, and screen-reader compatible navigation are indispensable to her ability to use websites on equal terms with sighted consumers.

4.      Plaintiff brings this civil action against Defendant CV Imports, LLC d/b/a CV Linens ("Defendant" or "CV Linens") for its failure to design, construct, maintain, and operate its highly interactive commercial website, www.cvlinens.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. CV Linens markets and sells event linens, napkins, tablecloths, and related décor products directly to the public through its website, while also promoting customer care, returns, shipping, loyalty, and live-chat services through the same digital platform.

5.      On June 30, 2026, July 3, 2026, and July 10, 2026, Plaintiff attempted to access www.cvlinens.com using screen-reader technology with the intent to research and purchase two specific products: the "5 pcs/pk Leaf Branch Reversible Jacquard Napkin 20x20 - Dusty Blue" and the "Velvet 132 Round Tablecloth - Apple Red." Plaintiff selected those products because she was planning decorative tabletop options for family celebrations and small hosted gatherings, wanted textiles with visually rich but classic styling that could create contrast and elegance in a formal tablescape, and was specifically drawn to CV Linens because the website represented itself as a specialized wholesale event-supply source with broad selection, shipping incentives, customer-care resources, and detailed product-specific imagery and merchandising not typically gathered in one place on general marketplace sites.

6.      Plaintiff chose CV Linens over other websites offering similar goods because CV Linens presented itself as a dedicated event-linen retailer with specialized inventory for napkins, tablecloths, and coordinating décor, together with customer support, returns information, shipping

information, and curated "shop the look" merchandising intended to help customers compare event-styling options. Those features made the website especially attractive to Plaintiff, who needs a single accessible source where she can independently evaluate product appearance, dimensions, availability, and related services before deciding whether to buy.

7.      Despite multiple attempts, Plaintiff was unable to independently complete her objectives because the website contained pervasive access barriers, including missing alternative text, missing form labels, empty links, broken ARIA references, broken same-page links, skipped heading structures, and low-contrast elements. Those barriers prevented Plaintiff's screen reader from reliably conveying what the products looked like, how the products were styled in the gallery images, how to use interactive controls, and how to obtain important product and transactional information.

8.      The barriers were not isolated. A SortSite audit of the website identified accessibility issues across the site, and separate WAVE audits of the product pages Plaintiff attempted to use revealed 45 errors on the Dusty Blue napkin page, 37 errors on the Apple Red tablecloth page, and 33 errors on the Black velvet tablecloth page, including repeated missing alternative text and 17 missing form labels on each audited product page. These barriers directly interfered with Plaintiff's ability to discern product information and independently navigate the purchase path. Exhibit B

9.      The WAVE audit for the Dusty Blue napkin page showed 24 missing alternative text errors, 17 missing form labels, 3 empty links, and 1 broken ARIA reference. The audit also reflected product-image and interface content such as "20x20 Dusty Blue triangle fold," "20x20 Dusty Blue on top a dinner plate," "20x20 Dusty Blue bundle," and "branch jacquard napkins on an elegant table setting," demonstrating that the page relied heavily on image-driven merchandising while simultaneously presenting numerous accessibility failures that obstructed equivalent access to that visual information.

10.    The WAVE audit for the Apple Red tablecloth page showed 18 missing alternative text errors, 17 missing form labels, 1 empty link, and 1 broken ARIA reference. The audit also captured product-related image content such as "120 Round Velvet Round Tablecloth - Apple Red Image," "A round table covered in an Apple Red velvet tablecloth, set with elegant glassware and a floral centerpiece," and "garden wedding reception with Velvet 132 Round Tablecloth - Apple Red," confirming that sighted users were presented with styling cues and product-display context that Plaintiff could not reliably access through assistive technology because of the site's coding defects.

11.    Plaintiff was unable to discern critical information about these products because the website's barriers deprived her of an accessible equivalent of the product galleries, prevented dependable announcement of controls and fields, and obstructed navigation to supporting content such as customer care, helpful links, reviews, and related product information. As a result, Plaintiff could not independently determine material information such as what the products looked like in different presentation settings, whether the image sequence corresponded to color, fold, size, or décor variations, how to interact with menus and form controls, and how to proceed toward purchase or request assistance.

12.    Defendant CV Linens appears to operate through CV Imports, LLC, a Texas limited liability company. Public business-profile information identifies "CV Linens" as an LLC and lists "CV Imports, LLC" as an alternate name for the business operating from Georgetown, Texas.

13.    Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that its website becomes and remains accessible to blind and visually impaired users. Plaintiff remains interested in purchasing event-linen products from CV Linens because of the company's specialized selection and event-focused offerings, but she cannot do so independently unless the website is remediated.

## JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 et seq.

15.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state-law claims, including those under the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), and the New York State Civil Rights Law, N.Y. Civ. Rights Law § 40-c and § 40-d ("NYCRL").

16.    Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because Plaintiff accessed and attempted to use Defendant's website from her residence in Bronx County, New York, within this District, and a substantial portion of the discriminatory conduct giving rise to this action occurred within this District.

17.    Defendant conducts substantial and continuous business in New York and in this District through its interactive commercial website by offering products for sale to New York consumers and transmitting computer files over the Internet in connection with those commercial transactions. Courts have recognized that such online commercial activity may support jurisdiction in accessibility litigation. See *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351 (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. 162 (2018); *Godfried v. Ford Motor Co.*, 2021 U.S. Dist. LEXIS 87012 (D. Me. May 6, 2021); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *Panarra v. HTC Corp.*, No. 6:20-cv-6991 (W.D.N.Y. Apr. 15, 2022).

18.     Defendant owns, operates, and controls www.cvlinens.com, an interactive website through which it markets and sells event-linen products and provides customer-facing support resources. Defendant's online business is available to consumers in New York, including Plaintiff.

**NATURE OF ACTION**

19.     This action arises under Title III of the ADA, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing retail website that denies blind and visually impaired individuals full and equal access to goods, services, privileges, and advantages made available to the public. Plaintiff attempted to access Defendant's website using screen-reader technology but encountered multiple access barriers that prevented meaningful engagement with its products and related services.

20.     The Internet has become a vital source of information and a primary means of conducting everyday activities such as shopping, research, communication, and obtaining customer support. For blind and visually impaired individuals, equal participation in modern commerce depends on websites being coded so that screen-reading software can interpret content and functionality.

21.     Blind and visually impaired individuals access websites using keyboards in conjunction with screen-access software that vocalizes content or renders it through refreshable Braille devices. Unless websites are properly coded to interface with such technology, blind users cannot independently access the same information and services available to sighted consumers.

22.     Users of Windows-enabled devices may rely on screen-reading programs including Job Access With Speech ("JAWS") and NonVisual Desktop Access ("NVDA"). These tools are indispensable to blind users and often provide the only means of independently navigating the Internet.

23.    For screen-reading software to function, website content must be capable of being rendered into text. As *Andrews v. Blick Art Materials, LLC* explains, screen-reading software translates the visual Internet into an auditory equivalent and enables visually impaired users to navigate websites through auditory cues and keyboard commands. 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017).

24.    The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG"), which establish internationally recognized standards for digital accessibility. Courts and regulators have recognized WCAG as the appropriate benchmark for accessible website design.

25.    Non-compliant websites pose recurring barriers to blind and visually impaired users, including missing text equivalents for non-text elements, unlabeled navigation regions, inaccessible forms and input fields, content conveyed solely through visual presentation, links lacking descriptive context, undetectable default language settings, broken markup, and user-interface elements whose roles and states cannot be programmatically determined.

## STATEMENT OF FACTS

26.    Plaintiff Christine Thomas is a legally blind consumer residing in Bronx County, New York. She has permanent complete loss of vision in her right eye and severe, significantly impaired vision in her left eye arising from traumatic childhood injury, and she requires appropriate accommodations and assistive resources commensurate with that disability.

27.    On June 30, 2026, Plaintiff visited www.cvlinens.com to research event-linen products for upcoming family gatherings and decorative home entertaining. Plaintiff was particularly interested in the "5 pcs/pk Leaf Branch Reversible Jacquard Napkin 20x20 - Dusty Blue" because the product appeared to offer a refined reversible pattern and color suitable for a formal dining setup, and in the "Velvet 132 Round Tablecloth - Apple Red" because a richly

colored velvet round tablecloth would function as a dramatic base layer for celebratory tablescapes.

28.     Plaintiff chose CV Linens for that search because the company appeared to offer specialized event-textile inventory, curated style-oriented merchandising, shipping incentives, customer-care resources, and event-focused product organization that distinguished the site from more generalized retail platforms. Plaintiff sought a retailer whose product pages would allow her to independently compare textile appearance, event suitability, and presentation ideas before making a purchase.

29.     During her June 30, 2026 visit, Plaintiff attempted to navigate the Dusty Blue napkin page. The WAVE audit of that page later confirmed 45 accessibility errors, including 24 missing alternative text errors, 17 missing form labels, 3 empty links, and 1 broken ARIA reference, while also showing multiple image-based depictions of the product in folded, plated, bundled, and styled-table configurations. Those barriers prevented Plaintiff from reliably understanding the product's appearance, presentation variations, and associated interactive controls.

30.     On July 3, 2026, Plaintiff returned to the website and attempted to access the Apple Red tablecloth page. The WAVE audit of that page later confirmed 37 accessibility errors, including 18 missing alternative text errors, 17 missing form labels, 1 empty link, and 1 broken ARIA reference, and reflected image content depicting the product on a round table, with elegant glassware and floral centerpiece styling, and in a garden wedding reception setting. Plaintiff could not independently discern whether the images reflected different views, use environments, or styling details material to her purchase decision.

31.     On July 10, 2026, Plaintiff again returned to www.cvlinens.com to attempt to review supporting information, including customer care, helpful links, reviews, and transactional

features that could help her complete a purchase or seek assistance. The audits show recurring unlabeled or inaccessible controls, empty links, broken same-page links, and numerous missing form labels across the relevant product pages and the broader website, which interfered with Plaintiff's efforts to navigate support and transactional content independently.

32.    Plaintiff was unable to discern critical product information because the site's inaccessible coding prevented her screen reader from communicating an accessible equivalent of the visual merchandising and interface structure presented to sighted users. On the Dusty Blue napkin page, the site relied on photographs conveying folds, plating, bundles, and complete table styling; on the Apple Red tablecloth page, it relied on photographs conveying table coverage, color impact, and event-context styling. Without dependable alt text, labels, and navigational semantics, Plaintiff could not know what was being shown, how many meaningful product views were available, or whether important product-selection or purchase controls were properly activated.

33.    Additional audited CV Linens product pages reflected similar defects. The Black velvet tablecloth page showed 33 errors, including 14 missing alternative text errors, 17 missing form labels, 1 empty link, and 1 broken ARIA reference, further indicating that the access barriers Plaintiff encountered were systemic rather than accidental or isolated to a single SKU.

34.    The SortSite audit identified accessibility issues across the website and corroborates that the barriers at issue were part of a broader pattern of noncompliance rather than a single-page anomaly.

35.    Plaintiff remains highly motivated to return to Defendant's website once it is made accessible. She continues to desire access to Defendant's event-linen offerings because of the site's specialized inventory and product assortment, but she will remain unable to browse,

compare, and purchase products independently unless Defendant removes the barriers that exclude blind and visually impaired consumers.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action on behalf of herself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.cvlinens.com and were denied equal access to its services, offerings, and support due to persistent digital accessibility barriers during the relevant statutory period.

37.    Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.cvlinens.com and were similarly denied equal access to its offerings due to the same systemic barriers.

38.    Common questions of law and fact exist among the Class, including:

- Whether www.cvlinens.com qualifies as a public accommodation under Title III of the ADA.

- Whether Defendant's website constitutes a place or provider of public accommodation under the NYCHRL.

- Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support.

- Whether the same barriers violate the NYSHRL, NYCRL, and NYCHRL by excluding blind users from meaningful participation in the digital marketplace.

39.    Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading technology and keyboard navigation to access online platforms, and she

encountered the same systemic barriers—unlabeled controls, inaccessible forms, unreadable image-driven merchandising, and broken navigation—that affect all Class members.

40.    Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability-rights and complex class-action litigation, has no interests antagonistic to those of the Class, and seeks declaratory and injunctive relief applicable to all members.

41.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making final injunctive and corresponding declaratory relief appropriate respecting the Class as a whole.

42.    Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for blind individuals excluded by the same website barriers.

## <u>FIRST CAUSE OF ACTION</u>
**Violations of the ADA, 42 U.S.C. § 12182 et seq.**

43.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

44.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12182(a), provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, leases to, or operates a place of public accommodation.

45.    Defendant's website is a service offered to the general public and must be equally accessible to all potential consumers.

46.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

47.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination includes, inter alia, a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, unless such steps would fundamentally alter the nature of the goods or services being offered or result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

48.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff is a member of a protected class under the ADA, has a physical disability that substantially limits the major life activity of sight, and has been denied full and equal access to Defendant's website and the goods and services offered therein.

49.    Defendant has failed to take prompt and equitable steps to remedy the discriminatory conduct, and the violations are ongoing.

50.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests the relief set forth below.

**SECOND CAUSE OF ACTION**
**Violation of the New York State Human Rights Law**

51.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

52.     At all relevant times, the NYSHRL, N.Y. Exec. Law § 290 et seq., covered Defendant's actions. Plaintiff, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under N.Y. Exec. Law § 292(21).

53.     Defendant, at all relevant times, owned and operated a place of public accommodation, namely the subject website, www.cvlinens.com, within the meaning of N.Y. Exec. Law § 292(9). Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

54.     Plaintiff has visited the website on a number of occasions and has encountered barriers to access that continue to exist.

55.     Under N.Y. Exec. Law § 296(2)(a), it is an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, because of the disability of any person, directly or indirectly, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities, or privileges thereof.

56.     Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. N.Y. Exec. Law § 296(2)(c)(i).

57.     Defendant's actions violate N.Y. Exec. Law § 296(2)(a) by: (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern its content without a screen-reading program; (ii) failing to remove access barriers and make accessibility features known to blind and visually impaired individuals; and (iii) refusing to modify the website when such modifications are necessary to afford facilities, privileges,

advantages, or accommodations to individuals with disabilities. This inaccessibility denies blind and visually impaired individuals full and equal access to the goods and services Defendant makes available to non-disabled persons.

58. Defendant's discriminatory practice also includes a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage, or accommodation being offered or would result in an undue burden. N.Y. Exec. Law § 296(2)(c).

59. Established guidelines exist for making websites accessible to disabled individuals. WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people and is widely followed by large business entities and government agencies.

60. Defendant has intentionally and willfully discriminated against Plaintiff and the Subclass in violation of the NYSHRL, and that discrimination continues to date.

61. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and the Subclass, causing irreparable harm.

62. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act, in addition to reasonable attorneys' fees, costs, and disbursements of this action.

### THIRD CAUSE OF ACTION
### Violation of New York State Civil Rights Law

63. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

64. Plaintiff served notice upon the New York State Attorney General as required by N.Y. Civ. Rights Law § 41.

65. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodation, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

66. No person because of disability, as defined in N.Y. Exec. Law § 292(21), shall be subjected to any discrimination in his or her civil rights by any person or by any firm, corporation, or institution. N.Y. Civ. Rights Law § 40-c. Plaintiff is disabled under the NYCRL.

67. Defendant discriminates against Plaintiff and the Subclass under N.Y. Civ. Rights Law § 40 because Defendant's website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

68. Defendant intentionally and willfully failed to remove the barriers on its website, thereby discriminating against Plaintiff and the Subclass and preventing access in violation of N.Y. Civ. Rights Law § 40-c.

69. Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against Plaintiff and the Subclass members.

70. Under N.Y. Civ. Rights Law § 41, a corporation that violates any of the provisions of §§ 40, 40-a, 40-b, or 42 shall be liable for a penalty of not less than $100 nor more than $500, to be recovered by the person aggrieved.

71. Plaintiff and the Subclass therefore demand compensatory damages of $500.00 for Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civ. Rights Law § 40 et seq.

**FOURTH CAUSE OF ACTION**
**Violations of the New York City Human Rights Law**

72.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73.     N.Y.C. Admin. Code § 8-107(4)(a) provides that it is an unlawful discriminatory practice for any person who is the owner, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation, because of any person's disability, directly or indirectly to refuse, withhold from, or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation. [file:1]

74.     Defendant is subject to the NYCHRL because it owns and operates the website www.cvlinens.com, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

75.     Defendant violates N.Y.C. Admin. Code § 8-107(4)(a) by refusing to update or remove access barriers to its website, causing the website and the services integrated therein to be inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

76.     Defendant is required to make reasonable accommodation to the needs of persons with disabilities. N.Y.C. Admin. Code § 8-107(15)(a).

77.     Defendant's actions constitute willful and intentional discrimination against the Subclass based on disability in violation of the NYCHRL because Defendant has: (a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; (b) constructed and maintained a website whose inaccessibility is sufficiently intuitive and obvious; and (c) failed to take action to correct access barriers in the face of substantial harm and discrimination to blind class members.

78.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, and these violations are ongoing.

79.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed Class and Subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations, and opportunities of the website under N.Y.C. Admin. Code § 8-107(4)(a). Unless this Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

80.     Defendant's actions violate the NYCHRL, and Plaintiff therefore invokes the right to injunctive relief to remedy that discrimination.

81.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Admin. Code §§ 8-120 and 8-126(a) for each offense, and punitive damages pursuant to N.Y.C. Admin. Code § 8-502.

82.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### Declaratory Relief

83.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the website contains access barriers denying blind customers full and equal access to the products, services, and facilities of the website, which Defendant owns, operates, and controls, and fails to comply with applicable laws, including but not limited to Title III of the ADA and N.Y.C. Admin. Code § 8-107 et seq., prohibiting discrimination against the blind.

85.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A preliminary and permanent injunction prohibiting Defendant from violating Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 et seq., N.Y.C. Admin. Code § 8-107 et seq., and the laws of New York;

A preliminary and permanent injunction requiring Defendant to take all steps necessary to make the website fully compliant with the requirements of the ADA and its implementing regulations, so that the website is readily accessible to and usable by blind individuals;

A declaration that Defendant owns, maintains, and/or operates the website in a manner that discriminates against blind and visually impaired persons and fails to provide access as required by the ADA and the laws of New York;

An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3), appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

Compensatory damages in an amount to be determined at trial, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed Class and Subclasses for violations of the NYCHRL, NYSHRL, and NYCRL;

Pre-judgment and post-judgment interest;

An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

Such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the

Complaint raises.


Dated: July 15, 2026
        New York, New York

                                        Respectfully submitted,
                                        JOSEPH & NORINSBERG LLC
                                        By: /s/ Robert L. Schonfeld
                                        Robert L, Schonfeld
                                        Attorneys for Plaintiff
                                        825 Third Avenue, Suite 2100
                                        New York, New York 10022
                                        (212) 227-5700